UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
MOHAMED EL MOCTAR TALEB MAAZOUZ,

                Petitioner,

                                                          25-cv-9388 (PKC)

    -against-                                        ORDER

JUDITH ALMODOVAR, in her capacity as Field
Office Director of Enforcement and Removal
Operations, New York City, Immigration and
Customs Enforcement; KRISTI NOEM, in her
official capacity as Secretary of the United States
Department of Homeland Security; and
PAMELA BONDI, in her official capacity as
Attorney General of the United States,

                Respondents.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        On November 10, 2025, petitioner Mohamed El Moctar Taleb Maazouz was detained by immigration authorities and the same day filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (ECF 1; ECF 8 at 6.)  In an Order issued that day, the Court set a hearing on the petition and ordered Respondents not to remove Maazouz from this District.  (ECF 5.)

        Claim One of the petition alleges ICE violated 8 U.S.C. § 1232(c)(2)(B) by failing to consider the least restrictive setting in which Maazouz could be detained.  Claim Two alleges ICE violated Maazouz's right to due process under the <u>Accardi</u> doctrine by failing to follow its own policies related to section 1232(c)(2)(B).

Maazouz requests that the Court declare that his detention violates 8 U.S.C. § 1232(c)(2)(B) and the Administrative Procedure Act ("APA") and order his immediate release. (ECF 1 at 11.)  In the alternative, he seeks an order from the Court requiring a re-determination of the conditions of his custody under section 1232(c)(2)(B) or a bond hearing under 8 U.S.C. § 1226(a).  (Id.; ECF 10 at 10.)  At a December 4 hearing, the Court orally ruled that Respondents must give Maazouz a bond hearing within seven days.

The Court now concludes that Maazouz has no viable claim under section 1232(c)(2)(B) because he no longer falls within its ambit.  The Court also concludes that he is presently detained under section 1226(a) and entitled to a bond hearing.

BACKGROUND

Maazouz is a citizen of Mauritania born on April 26, 2006.  (ECF 1 at 2, ¶ 8.)  He entered the United States on or about April 4, 2024, from Mexico and was apprehended by U.S. Customs and Border Protection near Otay Mesa, California.  (ECF 9 ¶ 3.)  He was seventeen years old at the time.  (Id.)  As a result of his age, he was designated an Unaccompanied Alien Child ("UAC") and transferred to the custody of the U.S. Department of Health and Human Services, Office of Refugee Resettlement ("ORR").  (Id. ¶¶ 3-4; ECF 8 at 6.)

Less than a month later, on April 26, 2024, Maazouz turned eighteen and as a result, was transferred out of ORR custody.  (ECF 8 at 6.)  Maazouz's verified petition unambiguously asserts that "[u]pon turning 18 on April 26, 2024, Petitioner was transferred to ICE custody, and he was released." (ECF 1 at 3, ¶ 5.)  Respondents are unable to confirm whether this is the case but state that Maazouz was released on April 30, 2024.  (ECF 9 ¶¶ 4-5.)

The Court proceeds based upon the assumption that Maazouz's verified assertion is true.[1] At the hearing on December 4, Maazouz's counsel confirmed that since his release, he has been subject to the requirements of informing immigration authorities of any change in address and appearing for scheduled check-ins.

On July 10, 2024, Maazouz "filed an affirmative asylum application with [U.S. Citizenship and Immigration Services], consistent with his right as a UAC to have his asylum claim initially adjudicated by USCIS." (ECF 1 at 3, ¶ 4.) The application remains pending. (Id. ¶ 6.)

On July 10, 2025, Maazouz was arrested by the NYPD, which led to a charge of assault in the third degree under New York Penal Law 120.00(1). (ECF 9 ¶ 6.) The charge was later expunged from his record. (Id.)

On October 22, 2025, ICE mailed Maazouz a notice to appear at 201 Varick Street on November 10 for a scheduled appointment. (Id. ¶ 7.) When Maazouz appeared, he was taken into custody by ICE, transferred to 26 Federal Plaza,[2] and served with a Warrant for Arrest of Alien, Form I-200, and a Notice to Appear.[3] (Id.) As noted, that day, the Court

---

[1] Despite the unambiguous nature of Maazouz's assertion, his lawyer equivocated on the point at oral argument. DHS believes Maazouz was released from custody on April 30, 2024, but is unable to state whether he was released by DHS/ICE or ORR. (ECF 9 ¶¶ 4-5.)

[2] Maazouz describes the conditions of confinement in 26 Federal Plaza in the section of his petition titled "Factual and Procedural Background[.]" (ECF 1 at 3-7.) To the extent Maazouz seeks to assert a conditions of confinement claim, that claim has become moot, as Maazouz was only held in 26 Federal Plaza from November 10 to November 11. (See ECF 8 at 21.) "This Circuit has long and consistently held that a plaintiff's request for declaratory or injunctive relief relating to a correctional facility is moot once plaintiff is transferred or released from the facility." Phillips v. Ienuso, No. 93-cv-6027, 1995 WL 239062, at *1 (S.D.N.Y. Apr. 24, 1995) (Sotomayor, J.); see also De Melo v. Decker, No. 20-cv-2643, 2021 WL 4460970, at *4 (S.D.N.Y. Sept. 28, 2021) (Carter, J.) (dismissing as moot habeas petition based on conditions of confinement in ICE custody where petitioner was no longer being held in the facility at issue). While a claim for damages may not be moot if Maazouz sought to assert one, such a claim would nonetheless fail, as damages claims are not properly asserted in habeas petitions. See Jenkins v. Haubert, 179 F.3d 19, 24 (2d Cir. 1999) (citing Preiser v. Rodriguez, 411 U.S. 475, 493 (1973)).

[3] The Notice to Appear informed Maazouz that he is "inadmissible under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." (ECF 9 ¶ 7.)

granted Maazouz's application for a temporary restraining order enjoining Respondents from moving him outside this District and scheduled the December 4 hearing. (ECF 5.)

On November 11, 2025, ICE transferred Maazouz to Orange County Jail in Goshen, New York, where he continues to be held pending removal proceedings under 8 U.S.C. § 1225(b)(2)(A). (ECF 9 ¶¶ 8, 11; ECF 8 at 6.) At his initial master calendar hearing on November 17, the judge scheduled pleadings to be taken on November 24. (ECF 9 ¶ 10.) On December 2, an immigration judge denied Maazouz's request for a custody redetermination hearing. (ECF 11.)

DISCUSSION

I. Section 1232(c)(2)(B) Claim

Maazouz asserts that because he was first detained as an unaccompanied child, ICE should have immediately considered releasing him to "the least restrictive setting available" when it detained him on November 10, 2025. As support, Maazouz relies on the Trafficking Victims Protection Reauthorization Act ("TVPRA"), which at section 1232(c)(2)(B) provides that:

> If a minor described in subparagraph (A) reaches 18 years of age and is transferred to the custody of the Secretary of Homeland Security, the Secretary shall consider placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight. Such aliens shall be eligible to participate in alternative to detention programs, utilizing a continuum of alternatives based on the alien's need for supervision, which may include placement of the alien with an individual or an organizational sponsor, or in a supervised group home.

Maazouz argues that he is entitled to these protections indefinitely because he is a "former unaccompanied alien child[]" who "reach[ed] 18 years of age" and was transferred to DHS

custody. (ECF 10 at 4.) Respondents disagree, arguing that section no longer applies to him. For the reasons below, the Court agrees, and finds section 1232(c)(2)(B) does not apply to Maazouz's present detention principally because his rights under the section terminated upon his release in late April 2024 days after turning eighteen years of age.

The TVPRA defines a "minor described in subparagraph (A)" in section 1232(c)(2)(B) as an "unaccompanied alien child in the custody of the Secretary of Health and Human Services." 8 U.S.C. § 1232(c)(2)(A). An unaccompanied alien child ("UAC") is in turn defined as "a child who--(A) has no lawful immigration status in the United States; (B) has not attained 18 years of age; and (C) with respect to whom--(i) there is no parent or legal guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2).

Judge Woods interpreted these provisions and found the petitioner, Mendez Ramirez, was not entitled to a "least restrictive setting" determination pursuant to section 1232(c)(2)(B) because he did not satisfy the statutory preconditions, namely that "(1) he or she was a minor described in subparagraph (A) [*i.e.*, a UAC in the custody of the Secretary of Health and Human Services]; (2) who reaches 18 years of age; and (3) is transferred to the custody of the Secretary of Homeland Security." Mendez Ramirez v. Decker, 612 F. Supp. 3d 200, 210 (S.D.N.Y. 2020) (quoting Jose L.P. v. Whitaker, 431 F. Supp. 3d 540, 547 (D.N.J. 2019)) (internal quotation marks omitted).

Judge Woods found that Mendez Ramirez did not meet the first precondition because he was not a UAC when he was arrested. At that point, he had turned eighteen and been released by ORR to live with his mother. Id. at 211-12; see 6 U.S.C. § 279(g)(2) (defining a UAC as a minor without lawful immigration status in the U.S. and no parent or legal guardian in

- 5 -

the country, or no parent or legal guardian in the country who can provide care and custody). Nor did Mendez Ramirez meet the third precondition. He could not be said to be in the "custody" of ORR in any sense at the time of his arrest because, by statute, ORR ceases to have any authority over UACs once they reach the age of eighteen or otherwise no longer meet the statutory definition of a UAC. Id. at 213-14.

Judge McNulty of the District of New Jersey had previously reached the same result, relying in part on the third precondition that the petitioner be "transferred to the custody of" DHS. Jose L.P. v. Whitaker, 431 F. Supp. 3d 540 (D.N.J. 2019). The petitioner argued that section 1232(c)(2)(B) is "broad enough to cover the automatic change in status—the "transfer" of jurisdiction from HHS/ORR to DHS—that occurs by virtue of the minor's passing his or her eighteenth birthday." Id. at 549. Judge McNulty declined to accept this proposition, finding that the word "transfer" connotes an "intentional result of the actor or actors involved" and a "relatively discrete or abrupt change in location or control[.]" Id. The petitioner in Jose L.P. had not been "transferred" to DHS at his arrest because there was a "lengthy delay" between his custody with ORR and his arrest by ICE and "no indication that anyone intentionally transferred custody from HHS/ORR to DHS/ICE." Id. at 549-50.

Maazouz was not a UAC when his current detention began as he had already reached the age of eighteen. See 6 U.S.C. § 279(g)(2). And he was not being "transferred" to DHS in the meaning of the statute because, like Jose L.P., his time in ORR's custody had ended well over a year earlier and there is no evidence suggesting that his current detention resulted from an intentional transfer by ORR to ICE. ICE was therefore not required to perform a "least restrictive setting" determination.

Maazouz further urges that ICE ignored its own internal policy requiring it to create documentation showing that it complied with section 1232(c)(2)(B) by "consider[ing] alternatives to detention[.]" (ECF 1 at 4, ¶ 11.) Maazouz alleges this constitutes a violation of the Accardi doctrine, which stands for the principle that federal agencies generally must follow their own rules, see Montilla v. Immigration and Naturalization Service, 926 F.2d 162, 166 (2d Cir. 1991) (discussing United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954)), and thus deprived him of due process under the Fifth Amendment. (ECF 1 at 9-10, ¶¶ 47-57.) Because section 1232(c)(2)(B) does not cover Maazouz, the Accardi doctrine is inapplicable, and the Court does not reach Maazouz's due process claim.

II.     Section 1226(a) Claim

Maazouz argues that his detention is governed by section 1226(a), not, as Respondents contend, by section 1225(b)(2)(A).[4] In Sun v. Almodovar, No. 25-cv-9262, 2025 WL 3241268, at *2 (S.D.N.Y. Nov. 20, 2025) (Castel, J.), this Court joined a growing consensus in this District in concluding that "section 1226(a) governs the detention of an alien pending a removal determination and that the mandatory detention provision of section 1225(b)(2)(A) applies to 'an alien seeking admission' when presenting at arrival." This Court follows its Sun decision here. Because Maazouz was detained after unlawful entry into the United States then released into the country and only re-detained many months later, he is not "seeking admission." Section 1226(a) thus governs his detention, and a bond hearing is appropriate relief.

---

[4] Maazouz's petition implicitly raised this argument by requesting as relief a bond hearing, as section 1225(b)(2)(A) does not allow for bond hearings. In Maazouz's reply brief and at oral argument, this argument was made explicit. (See ECF 10.)

- 8 -

III. <u>Administrative Procedure Act Claim</u>

As a part of Maazouz's requested relief, he asks the Court to declare that his detention violates the APA. He does not, however, specify an operative section of the APA nor allege how a violation occurred. (ECF 1 at 11.) The Court finds that this claim is poorly described and does not reach it.

CONCLUSION

For the foregoing reasons, the petition is GRANTED as to Maazouz's request for a bond hearing and otherwise DENIED. Respondents are ORDERED to cause an individualized bond hearing to be conducted before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) for Maazouz within seven (7) days of December 4, 2025. If no hearing is held within the designated period, Respondents shall immediately release Maazouz.

The Clerk is respectfully directed to close this case.

SO ORDERED.

_____<br>
P. Kevin Castel<br>
United States District Judge

Dated: New York, New York<br>
   December 8, 2025